UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------ X

| | |
|---|---|
| DAVID E. WHITE COMPANY, INC., a corporation doing business as TRINITY FRUIT SALES CO., | : CASE NO. 08 cv 827 : : FIRST AMENDED COMPLAINT : FOR VIOLATIONS OF |
| Plaintiff, | : PERISHABLE AGRICULTURAL : COMMODITIES ACT ("PACA") [7 |
| v. | : U.S.C. §499a, et seq.] : |
| AAAP USA CORPORATION, a corporation, | : : 1. BREACH OF CONTRACT; : 2. VIOLATION OF PACA; UNFAIR |
| Defendants. | :   CONDUCT; [7 U.S.C. §499b(2) and :   (4)] : 3. FRAUD IN THE INDUCEMENT : 4. MONEY HAD AND RECEIVED : 5. MONEY PAID : 6. QUANTUM MERUIT : : [JURY DEMAND] |

------------------------------------------------------------ X

Plaintiff DAVID E. WHITE COMPANY, INC., a corporation doing business as TRINITY FRUIT SALES ("Plaintiff" or "TFS"), alleges as follows:

## I.

## JURISDICTION AND VENUE

1. This court has jurisdiction of this case pursuant to the Perishable Agricultural Commodities Act of 1930 as amended [7 U.S.C. §§499b] and pursuant to 28 U.S.C. §1331.

2. This court also has subject matter jurisdiction of this case pursuant to 28 U.S.C. §1332. The amount in controversy exceeds $75,000.00.

3. Venue is proper pursuant to 28 U.S.C. §1391(b).

4. Plaintiff is, and at all times material herein was, a corporation organized to do

business under the laws of the state of California, doing business as Trinity Fruit Sales having a principal place of business located in the City of Fresno, State of California.

5.  Plaintiff is informed and believes and thereon alleges that Defendant AAAP USA CORPORATION ("AAAP") is a corporation with its principal place of business located at 160 Plandome Road, Manhasset, New York 11030.

6.  Plaintiff is informed, believes and thereon alleges that Plaintiff AAAP is subject to license as a "dealer" or "commission merchant" as defined by the Perishable Agriculture Commodities Act ("PACA")  [7 U.S.C. §499a *et seq*.].

## II.

## FIRST CAUSE OF ACTION

### (Breach of Contract)

7.  Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 6 inclusive, of this Complaint as though fully set forth herein.

8.  Plaintiff is informed, believes and thereon alleges that Defendant AAAP is and at all times relevant herein was, engaged in the buying and/or selling of produce in and in contemplation of interstate and foreign commerce in wholesale and jobbing quantities as defined by 7 C.F.R. §46.2(m) and (x).  As such, Plaintiff further alleges that Defendant AAAP is and during times relevant herein was subject to the provisions of the PACA and all regulations promulgated by the Secretary of Agriculture of the United States of America pursuant to the PACA.

9.  On or about January 19, 2007, Defendant AAAP approached TFS and told TFS that AAAP was in the process of importing at least 130 containers of fresh citrus from Italy into the U.S. which it intended to sell to Costco and possibly other U.S. buyers.  AAAP further

explained that the containers of citrus were scheduled to arrive into the U.S. through entry ports in New Jersey between on or about February 13, 2007 and late April 2007.

10. AAAP further advised TFS that AAAP had need of a custom repacker to repack the citrus that was cleared for entry into the U.S. into retail bags and/or boxes, and proposed that TFS agree to act as that repacker. In particular, AAAP proposed that TFS agree to repack AAAP's citrus that met Costco specifications into Costco bags and to then deliver the repacked citrus to Costco receiving locations. AAAP further proposed that, as to citrus that did not meet Costco specifications, TFS repack the citrus for sale to other U.S. buyers and assist AAAP in its efforts to market said citrus.

11. AAAP further advised TFS that AAAP did not have the financial ability to prepay the ocean vessel freight charges that would be incurred in bringing the citrus from Italy to the U.S. and therefore proposed that TFS advance the ocean freight charges to AAAP, which would be reimbursed to TFS from the sales proceeds generated by AAAP's sale of its citrus.

12. AAAP specifically represented to TFS that the quantity, grade and quality of citrus imported into the U.S. would easily generate sales proceeds in amounts more than adequate to fully repay all freight advances and other repacking and marketing-related expenses that would be incurred by TFS.

13. As a result of the above described discussions, on or about January 19, 2007, TFS and AAAP entered into an oral agreement by which TFS agreed to act as a custom repacker for AAAP's citrus that it intended to import from Italy as described above and by which TFS further agreed to advance ocean freight charges to AAAP at the rate of $7,000.00 per container of citrus on the condition that the citrus imported by AAAP met all U.S. No. 1 grade requirements and was accepted by Costco.

14. In exchange, AAAP agreed, among other things, that it would import citrus that would meet or exceed U.S. No. 1 quality grades and which met Costco specification in sufficient quantities for TFS to receive full reimbursement for the freight advances, in addition to reimbursement of all other costs and expenses incurred in connection with repacking and marketing the citrus.

15. In reliance upon AAAP's agreement as set forth above, TFS advanced ocean freight charges to AAAP in the cumulative amount of $861,000.00 as follows: (a) $21,000.00 advanced on February 5, 2007; (b) $49,000.00 advanced on February 15, 2007; (c) $252,000.00 advanced on February 22, 2007; (d) $343,000.00 advanced on March 7, 2007; and (e) $196,000.00 advanced on March 16, 2007.  These advances were made by wire transfer directly into AAAP's bank accounts.

16. In further reliance upon AAAP's agreement as set forth above, TFS purchased custom citrus retail bags that were in compliance with Costco specifications to be used for repacking AAAP's citrus that was to be sold to Costco, at a cost of at least $110,112.63.  All such bags were custom designed to meet AAAP's and Costco's specifications and requirements.

17. Between on or about February 13, 2007 and late April 2007, AAAP delivered approximately 119 containers of Italian citrus to ports in New Jersey for entry into the U.S.

18. Pursuant to the above-described agreement, when the containers were granted entry into the U.S. and were released to cold storage, TFS sorted and repacked the citrus in accordance with the terms of TFS's agreement with AAAP.  TFS incurred additional costs and expenses in connection with repacking the citrus in amounts which are as yet undetermined.

19. Plaintiff is informed, believes and thereon alleges that of these 119 containers, only 1 container that was allowed entry into the U.S. met Costco specifications or contained

citrus that was of the type, quality and condition required under the agreement, that being U.S. #1. As to the containers that did not contain citrus of the type, quality and condition required by Costco, AAAP asked TFS to assist AAAP in its efforts to market the citrus on a consignment basis and further advised TFS that TFS's freight advances and other costs incurred in connection with repacking and marketing the citrus would be fully repaid from the sales proceeds generated by the consignment sales.

20.     In reliance upon AAAP's above-described representations, between on or about February 14, 2007 and late March 2007 or early April 2007, TFS assisted AAAP in its efforts to market approximately 135 containers of AAAP's citrus that was not of the type, kind, quality and condition required by Costco.

21.     Pursuant to the above-described agreement between AAAP and TFS, after all of AAAP's citrus that was granted entry into the U.S. had been repacked by TFS and marketed, the net sales proceeds generated by such sales were applied to the sums due to TFS from AAAP for the freight advances made by TFS and for the cost of bags purchased by TFS as described above. Because the citrus imported by AAAP failed to meet the minimum contract specifications, the net sales proceeds were inadequate to fully reimburse TFS the sums due to it, leaving a net balance due in the amount of at least $817,159.63, itemized as follows:

| Invoice No. | Description | Amount |
| --- | --- | --- |
| 7001 | Amount due Trinity after funds received by Costco, less adjustment/rejections by Costs, plus freight advance and container rebate | $38,088.79 |
| 7002 | Amount due Trinity after funds received by Costco, less adjustment/rejections by Costs, plus freight advance and container rebate | $147,647.64 |

| 7003 | Amount due Trinity after funds received by Costco, less adjustment/rejections by Costs, plus freight advance and container rebate | $366,461.37 |
|---|---|---|
| 7004 | Amount due Trinity after funds received by Costco, less adjustment/rejections by Costs, plus freight advance and container rebate | $169,871.00 |
| 7005 | Amount due Trinity after funds received by Costco, less adjustment/rejections by Costs, plus freight advance and container rebate | -$15,021.80 |
| | Unused packing material | 110,112.63 |
| | **Total** | **$817,159.63** |

22. In addition, Plaintiff and Defendant AAAP agreed that Plaintiff would receive a commission of $1.00 for every carton received and accepted by Costco. As a result of Defendant AAAP's breach, Plaintiff was unable to carry out the contract, and as a consequence, Plaintiff lost profits it expected to receive from the contract, all to its damage in the amount of at least $111,513.00.

23. Beginning in late April 2007 and continuing, TFS has demanded that AAAP remit payment for the balance remaining due, but AAAP has failed and refused, and continues to fail and refuse, to pay the balance due or any portion thereof.

24. In or about November 2007, Plaintiff forwarded to Defendant AAAP invoices setting forth in detail the amounts owed by said Defendant as described herein.

25. Plaintiff has performed all conditions, covenants and obligations required to be performed by it under the agreements as set forth herein.

26. As a direct and proximate result of the failure of Defendant to deliver citrus of the

type, quality and condition required under the agreement set forth herein, and as a direct and proximate result of AAAP's refusal and failure to remit payment due to Plaintiff as described above, Plaintiff has suffered losses in the amount of at least $928,672.63, in addition to other losses incurred in connection with said breach in the amounts to be determined according to proof at the time of trial.

## III.

## SECOND CAUSE OF ACTION

### (For Violation Of Perishable Agricultural Commodities Act)

27.     Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 26, inclusive, of this complaint as though fully set forth herein.

28.     Plaintiff is informed, believes and thereon alleges that AAAP breached the above described agreements by failing to deliver in accordance with the terms of the agreement described herein fresh citrus, being a perishable agricultural commodity, bought, sold or contracted to be bought, sold or consigned in interstate or foreign commerce.  Therefore, Defendants have failed to perform the requirements of said agreement, express and implied, all in violation of the provisions of the PACA Title 7, U.S.C. §499b(2), and all pertinent regulations issued by the Secretary of Agriculture to the PACA.

29.     Beginning in or about January 19, 2007 and continuing through and including in or about late March 2007, AAAP represented to TFS that, among other things, (a) AAAP could and would deliver fresh citrus of the type, kind, quality and condition required under the above-described agreement in sufficient quantities to fully repay Plaintiff the freight advances and packing costs incurred by Plaintiff as described herein; (b) the supplier from whom AAAP procured the citrus in Italy, that being "AAAP Italy," was an experienced citrus grower; (c)

AAAP would import only citrus that met or exceeded U.S. No. 1 grade standards; (d) the citrus packed into the first several containers delivered by AAAP contained citrus was not representative of the citrus that was remaining to be delivered and that the future containers would contain citrus that met U.S. No. 1 grade standards; (e) AAAP had personally inspected the citrus groves in Italy and found the citrus be of the highest quality; and, (f) AAAP was an experienced importer with knowledge of all requirements necessary to import fresh citrus into the U.S.

30.     Plaintiff is informed, believes and thereon alleges that the above-described statements were misleading and/or false and were made for a fraudulent purpose in connection with the above described produce transactions all in violation of the provisions of the PACA Title 7, U.S.C. §499b(4), and all pertinent regulations issued by the Secretary of Agriculture to the PACA.

31.     As a direct and proximate cause and result of the wrongful acts and omissions of Defendant as alleged above, Plaintiff has suffered the cumulative loss of $817,159.63 due and owing to Plaintiff, in addition to other losses incurred in connection with said acts and omissions in amounts to be determined according to the proof at the time of trial.

## IV.

### THIRD CAUSE OF ACTION

**(For Fraud in the Inducement)**

32.     Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 31, inclusive, of this Complaint as though fully set forth herein.

33.     Beginning in or about January 19, 2007 and continuing through and including in or about late March 2007, AAAP induced TFS to enter into the agreements described above and

to make the freight advances and provide the services described herein by making the following, among other representations: (a) AAAP could and would deliver fresh citrus of the type, kind, quality and condition required under the above-described agreement in sufficient quantities to fully repay Plaintiff the freight advances and packing costs incurred by Plaintiff as described herein; (b) the supplier from whom AAAP procured the citrus in Italy, that being "AAAP Italy," was an experienced citrus grower; (c) AAAP would import only citrus that met or exceeded U.S. No. 1 grade standards; (d) the citrus packed into the first several containers delivered by AAAP contained citrus was not representative of the citrus that was remaining to be delivered and that the future containers would contain citrus that met U.S. No. 1 grade standards; (e) AAAP had personally inspected the citrus groves in Italy and found the citrus be of the highest quality; and, (f) AAAP was an experienced importer with knowledge of all requirements necessary to import fresh citrus into the U.S.

34. Each of the above representations, among others, were material misrepresentations of facts, upon which TFS relied in entering into its agreement to advance freight charges, purchase the materials, provide the services and take the actions described above.

35. Plaintiff is informed, believes, and thereon alleges that when Defendant made these representations, Defendant knew them to be false and made the representations with the intent to deceive TFS and to induce TFS into advancing the freight charges, purchase the materials, enter into the agreements set forth above and take the other actions described herein.

36. Plaintiff justifiably relied on Defendant's representations as set forth above, and as a direct and proximate result of such reliance, advanced the freight charges described herein, purchased the materials, and entered into the agreement and took the other actions as described

herein.

37. As a direct and proximate result of the representations described herein, and Plaintiff's reliance thereon, Plaintiff has suffered damages in the amount of at least $817,159.63 or in such higher amounts as may be established at the times of trial.

V.

## FOURTH CAUSE OF ACTION

**(Money Had and Received)**

38. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 36, inclusive, of this Complaint as though fully set forth herein.

39. Between on or about February 5, 2007 and March 16, 2007, Defendant became indebted to Plaintiff in the sum of at least $861,000.00 for money had and received by Defendant for the use and benefit of Plaintiff.

40. Commencing in April 2007 and continuing thereafter, Plaintiff has repeatedly demanded payment from Defendant, both orally and in writing.

41. No payment has been made except for $153,953.00, leaving a net sum due of at least $707,047.00, all of which is now owing, with appropriate interest on said sum.

VI.

## FIFTH CAUSE OF ACTION

**(Money Paid)**

42. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 41, inclusive, of this Complaint as though fully set forth herein.

43. Between on or about February 5, 2007 and March 16, 2007, Defendant became indebted to Plaintiff in the sum of at least $861,000.00 for money paid by Plaintiff for

Defendant, at Defendant's request, for payment of ocean freight as alleged above.

44. Between in or about February 2007 and early April 2007, Defendant became indebted to Plaintiff in the sum of at least $110,112.63 for money paid by Plaintiff for Defendant, at Defendant's request, for purchase of custom designed packing bags to be used for packing Defendant's citrus.

45. No payment has been made except for $153,953.00, leaving a net balance due of at least $817,159.53, all of which is now owing, plus appropriate interest on said sum.

VII.

### SIXTH CAUSE OF ACTION

**(Quantum Meruit)**

46. Plaintiff hereby realleges and incorporates by reference paragraphs 1 through 45, inclusive, of this Complaint as though fully set forth herein.

47. Between on or about February 13, 2007 and late April 2007, Plaintiff in good faith performed services for Defendant at Defendant's special request, including without limitation, providing the custom sorting and repacking services described above to Defendant, for Defendant's fresh citrus.

48. Defendant knew that these services were being provided and promised to pay their reasonable value.

49. Defendant accepted, used and enjoyed the services provided by Plaintiff, and Plaintiff therefore expected compensation for those services.

50. Beginning in April 2007 and continuing, Plaintiff has repeatedly demanded payment from Defendant, both orally and in writing.

51. The fair and reasonable value of services provided to Defendant is at least

$817,159.53, subject to proof at the time of trial.

52.     Defendant has failed and refused, and continues to fail and refuse, to pay Plaintiff for the reasonable and customary value of the services provided by Plaintiff.

53.     On a direct and proximate result of Defendant's failure to pay Plaintiff for the reasonable and customary value of the services, Plaintiff has been damaged in the amount of at least $817,159.53.

**WHEREFORE**, Plaintiff prays for judgment against Defendant as follows:

## FIRST CAUSE OF ACTION

### (For Breach Of Contract)

1.      For damages in the cumulative amount of at least $928,672.63, all of which qualifies for protection under the trust provisions of PACA;

2.      For interest thereon as provided in plaintiff's invoices from the date the obligation became due and payable to Plaintiff;

3.      For reasonable attorney's fees and costs and disbursements of suit incurred herein; and

4.      For such other and further relief as the Court may deem just and proper.

## SECOND CAUSE OF ACTION

### (For Violation Of Perishable Agricultural Commodities Act:  Failure To Account And Pay Promptly)

1.      For damages in the amount totaling at least $817,159.63;

2.      For interest thereon as provided in plaintiff's invoices from the date the obligation became due and payable to Plaintiff;

3.      For reasonable attorney's fees and costs and disbursements of suit incurred

herein; and

4. For such other and further relief as the Court may deem just and proper.

### THIRD CAUSE OF ACTION

### (Fraud In The Inducement)

1. For damages in the cumulative amount totaling at least $817,159.63;

2. For appropriate interest thereon from the date each obligation became due and payable to Plaintiff;

3. For reasonable attorney's fees and costs and disbursements of suit incurred herein; and,

4. For such other and further relief as this Court deems just and proper.

### FOURTH CAUSE OF ACTION

### (Money Had and Received)

1. For damages in the cumulative amount of at least $707,047.00;

2. For appropriate interest thereon from the date each obligation became due and payable to Plaintiff;

3. For costs and disbursements of suit incurred herein; and,

4. For such other and further relief as this Court deems just and proper.

### FIFTH CAUSE OF ACTION

### (Money Paid)

1. For damages in the cumulative amount of at least $817,159.63;

2. For appropriate interest thereon from the date each obligation became due and payable to Plaintiff;

3. For costs and disbursements of suit incurred herein; and,

4.	For such other and further relief as this Court deems just and proper.

## SIXTH CAUSE OF ACTION

**(Quantum Merit)**

1.	For compensatory damages according to proof;

2.	For appropriate interest thereon from the date each obligation became due and payable to Plaintiff;

3.	For costs and disbursements of suit incurred herein; and,

4.	For such other and further relief as this Court deems just and proper.

Respectfully submitted,

DATED:  April 10, 2008			By:	 /S/
					PETER A. RAGONE (PR-6714)
					ANTHONY L. COTRONEO (AC-0361)
					ROSNER, NOCERA & RAGONE, LLP
					110 Wall Street-23rd Floor
					New York, New York 10005
					Tel:  (212) 635-2244
					Fax:  (212) 635-0533

					-and-

					R. JASON READ
					California State Bar No. 117561
					RR 0232
					RYNN & JANOWSKY, LLP
					4100 Newport Place Drive, Suite 700
					Newport Beach, CA 92660
					Telephone: 949-752-2911
					Fax: 949-752-0953

					Attorneys for Plaintiff
					DAVID E. WHITE COMPANY, INC., a corporation doing business as TRINITY FRUIT SALES CO.